UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

CALEIDOSCOPE COMMUNICATIONS CORP., :
      Plaintiff, :
       :
      v. : File No. 1:08-CV-279
       :
FAIRPOINT COMMUNICATIONS, INC., :
      Defendant. :
_____

RULING ON DEFENDANT'S MOTION TO DISMISS
(Paper 5)

This action arises from a failed business relationship between Plaintiff Caleidoscope Communications Corp. ("Caleidoscope") and Defendant FairPoint Communications, Inc. ("FairPoint"). Now before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure 9(b) and 12(b)(6). For the following reasons, Defendant's Motion is DENIED.

I.   Factual Background

The following allegations are assumed to be true for the purpose of Defendant's Motion to Dismiss. Plaintiff Caleidoscope is a Vermont corporation that provides a variety of agent services for telecommunications companies in Maine, New Hampshire, Vermont and Massachusetts. For seven years, from 2001 through 2008, Caleidoscope acted as Verizon's largest telecommunications agent in Northern New England. In that role, Caleidoscope provided clients with a range of communications

1

products, services and technical support.  Caleidoscope and Verizon executed two contracts governing their relationship – one in 2001 and another in 2007.  The 2007 agreement ("Verizon/Caleidoscope Agreement") provided Rules of Engagement for securing business, as well as a payment structure detailing the amount and timing of payments by Verizon to Caleidoscope for its services.

In late 2007, Verizon began negotiating with Defendant FairPoint Communications, Inc. ("FairPoint") to sell certain portions of its telecommunications business in Maine, New Hampshire and Vermont.  As part of the transition of Verizon's business to FairPoint, Verizon informed Caleidoscope it would divide their existing Verizon Agreement into two separate parts.  One agreement would preserve Caleidoscope's role in Verizon's retained business, and the other agreement, which concerned the bulk of Caleidoscope's business with Verizon, would be assigned to FairPoint.  The assigned agreement was to be identical to the Verizon/Caleidoscope Agreement in all material terms. Notwithstanding these discussions, Caleidoscope and FairPoint continued contract negotiations.  FairPoint represented to Caleidoscope that it planned to implement an expanded agent program beyond Verizon's, with Caleidoscope as the "cornerstone" of this program.  Caleidoscope indicated it was interested in an

expanded role, but would require a new contract with FairPoint reflecting Caleidoscope's increased responsibilities.

As FairPoint and Caleidoscope negotiated a contract, but before the Verizon-FairPoint sale closed, FairPoint actively sought Caleidoscope's support in "smoothing the transition" for Verizon customers to FairPoint. Caleidoscope agreed, relying on its perceived partnership with FairPoint, and provided assistance in the form of valuable confidential and proprietary information regarding product development, marketing strategies, New England customer base and other competitive information.

The Verizon-FairPoint sale closed March 31, 2008. Within weeks after the closing, FairPoint's sales, customer care and technical support teams were overwhelmed with integration problems and customer service suffered. Customers complained of malfunctioning services, incorrect billing, disconnected services and a host of other problems. Many of FairPoint's dissatisfied customers were also Caleidoscope customers. Caleidoscope, consistent with its perceived partnership and imminent agency contract with FairPoint, responded by expending substantial resources to address these complaints.

During April of 2008, Caleidoscope notified a FairPoint representative that Verizon had miscoded Caleidoscope accounts transferred to FairPoint during the sale, which resulted in

3

Caleidoscope not being paid on those accounts. FairPoint assured Caleidoscope it would continue to be paid.

Despite the parties' continuing negotiations, FairPoint notified Caleidoscope in August 2008 that their relationship was terminated, along with its entire agent program. FairPoint has also declined to pay fees due on Caleidoscope's miscoded accounts. Caleidoscope now alleges FairPoint never intended to have an agency program, and its repeated assurances otherwise were simply part of a scheme to appropriate Caleidoscope's proprietary information, expertise, customers and strategic insight for its own benefit.

II. Discussion

    A.    Standard of Review

In a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court's function is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court accepts the facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff. Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).

B.  <u>Analysis</u>

Caleidoscope's Complaint seeks alternate forms of relief depending on whether the evidence supports the existence of a contractual relationship between the parties.  Caleidoscope seeks contract damages if the evidence shows the parties' relationship is governed by the assigned Verizon/Caleidoscope Agreement, but relies alternatively on its tort and equitable relief claims if there is no contract found between the parties.

Essentially, much of FairPoint's motion relies on the mistaken argument that "Caleidoscope should not be allowed to avoid dismissal of its claims by straddling the fence and taking the position that the [Verizon/Caleidoscope Agreement] is valid and binding when it is to Caleidoscope's advantage and alternately taking the position that there is no such Contract when [it] is detrimental to Plaintiff." Paper 9 at 3.  This premise is inconsistent with the Federal Rules of Civil Procedure and Second Circuit precedent, which "provide that inconsistent causes of action may be stated alternatively or hypothetically." <u>Strobl v. New York Mercantile Exchange</u>, 768 F.2d 22, 30 (2d Cir. 1985) (citing Federal Rules of Civil Procedure 8(a)(3) and 8(e)(2)).  With these principles in mind, the Court addresses Defendant's Motion to Dismiss.

1. <u>Tort Claims</u>

FairPoint moves to dismiss Caleidoscope's claims for Fraud and Deceit (Count I), Negligent Misrepresentation (Count II) and Tortious Interference with Advantageous Business Relations (Count VI) because they are barred by the economic loss rule. FairPoint argues the claims are "simply garden variety commercial contract claims re-framed as tort claims." Paper 5 at 8. The Court rejects this argument because Caleidoscope disputes whether a valid contract exists. Accepting the facts alleged in the Complaint as true and drawing all reasonable inferences in favor of Caleidoscope, as this Court must on a motion to dismiss, there is insufficient basis to dismiss Plaintiff's tort claims under the economic loss rule.

FairPoint also argues Caleidoscope has failed to allege its fraud and negligent misrepresentation claims with sufficient particularity to satisfy Federal Rule of Civil Procedure 9(b). Under the Rule, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Court has reviewed the Complaint and finds Caleidoscope's claims legally sufficient under Rule 9(b). Likewise, the Court rejects FairPoint's argument that Caleidoscope's claims for fraud

and negligent misrepresentation must be dismissed because FairPoint's statements were merely "puffery."

Finally, FairPoint argues Plaintiff's claim for Breach of the Implied Covenant of Good Faith and Fair Dealing must be dismissed because it is co-extensive with Plaintiff's Breach of Contract claim. Plaintiff has alleged sufficient facts to show the claim is based on separate and distinct conduct. Accordingly, the Court rejects Defendant's Motion to Dismiss Plaintiff's tort claims.

### 2. Claims for Equitable Relief

FairPoint moves to dismiss Caleidoscope's unjust enrichment and promissory estoppel claims because "[t]he legal relationship between Caleidoscope and FairPoint is governed by the inherited Verizon/Caleidoscope contract" and such quasi-contract remedies are unavailable where litigants are parties to a contract. Paper 5 at 13. Again, nothing before the Court establishes that the Verizon/Caleidoscope contract was assigned and Caleidoscope specifically disputes this fact. The Court finds the unjust enrichment and promissory estoppel claims are legally sufficient and rejects FairPoint's Motion to Dismiss these claims.

### 3. Contract Claim

FairPoint moves to dismiss Caleidoscope's contract claim to the extent it seeks damages precluded by the Verizon/Caleidoscope Agreement. Because the Court cannot find the

7

Verizon/Caleidoscope governs the parties' relationship, this argument is also rejected.

III. Conclusion

Accordingly, Defendant's Motion to Dismiss is DENIED. The parties shall jointly prepare and file a proposed discovery schedule/order in accordance with Local Rule 26.1(b) by June 30, 2009.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 16th day of June, 2009.

<pre>
                              /s/ J. Garvan Murtha
                              Honorable J. Garvan Murtha
                              United States District Judge
</pre>